DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT
_____

ALL MY SONS MOVING & STORAGE OF SOUTHWEST
FLORIDA, INC. d/b/a ALL MY SONS MOVING & STORAGE,

Appellant,

v.

A & E TRUCK SERVICE, LLC,

Appellee.

No. 2D21-3667
_____

September 23, 2022

Appeal pursuant to Fla. R. App. P. 9.130 from the County Court
for Lee County; Erik Leontiev, Judge.

Steven Dubberly of Dubberly, P.A., Aventura, for Appellant.

Ashley Segal and Gordon R. Duncan of Duncan & Associates, P.A.,
Fort Myers, for Appellee.

ROTHSTEIN-YOUAKIM, Judge.

All My Sons Moving & Storage of Southwest Florida, Inc. (AMS)

appeals the trial court's order denying its motion under Florida Rule

of Civil Procedure 1.540(b) to set aside the default final judgment.

Because AMS established excusable neglect, identified meritorious

defenses, and moved diligently to vacate the default, we reverse.

A & E Truck Service, LLC (A & E) brought a three-count action against AMS for failure to pay for truck repairs.  Count one alleged a worthless instrument claim under section 68.065, Florida Statutes (2019).[1]  On that count, A & E sought treble damages, attorney's fees and a service charge as permitted by statute, and costs.

A process server served an AMS sales associate with the summons and complaint in May 2020.[2]  After AMS failed to answer, A & E moved for a clerk's default.  The motion lacked a certificate of service.

Having been granted a clerk's default, A & E thereafter moved for a default final judgment on count one.  A & E certified service of *this* motion on AMS, but according to an affidavit later filed by

---

[1] A & E has dismissed the two other counts, and they are not pertinent to this appeal.

[2] The return of service identified the sales associate as the "office administrator" for Linda Dubberly, who is the president and registered agent of AMS, and the process server's affidavit, which A & E filed with the trial court, averred that the associate had identified herself to the process server as such.  Nothing in Dubberly's affidavit or the sales associate's deposition, however, suggests that she held anything other than an entry-level sales position.

Dubberly, "either AMS never received any court documents, the documents were misplaced with other unrelated documents and possibly thrown out, or the documents were not properly forwarded to [Dubberly's] attention."

The trial court entered default final judgment on count one on August 5, 2020, in the full amount requested by A & E, including treble damages. Then, on August 10, 2020, counsel for AMS appeared and moved to set aside the default. With its motion, AMS submitted an affidavit from Dubberly, who averred that she had been out of the office since the beginning of the pandemic because particular health concerns made her more vulnerable to COVID-19; that she had first learned of the lawsuit on August 10, when a member of her staff (whom she later identified as one of the managers) had notified her that AMS had received a copy of the default judgment in the mail; and that upon investigation, she had discovered that court documents had not been properly forwarded to her attention by "newly hired office staff." A & E opposed AMS's motion.

After the trial court denied without prejudice its first motion to set aside the default, AMS promptly filed a second motion. AMS

noted that A & E had not alleged in its complaint the "intent to defraud" element of a worthless instrument claim. AMS also submitted a more detailed affidavit by Dubberly, who reiterated that she had first learned of the lawsuit on August 10, 2020. She averred further that AMS's policy is to forward all court documents to her attention: before the pandemic, managers typically placed important documents in her incoming mail file, but because she was now working exclusively from home, managers were instead supposed to email documents to her. She averred that if the sales associate who had accepted service had followed proper procedure, the associate would have forwarded a copy of the summons and complaint to a manager who would have forwarded it to her, but her investigation revealed that the policy for forwarding documents to her had not been followed.

Dubberly also averred that AMS had stopped payment on the check to A & E because AMS had learned that A & E had not performed the promised repairs but had still charged AMS for them. AMS had been compelled to take the truck—which still did not run properly—to another mechanic.

A & E deposed the sales associate and filed a transcript of her deposition with the trial court in support of its opposition to AMS's second motion. During the deposition, the associate testified, among other things, that she had been working for AMS since June 2019; that she did not recall having been served with the summons and complaint; that only the "owners" (referring to Dubberly and her husband, Kevin Dubberly) have access to the mail; and that neither "owner" had come into the office since the pandemic started, although Kevin Dubberly used to be there every weekday from 9:00 a.m. to 5:00 p.m. Although the associate also testified that she had not been trained specifically on "how to handle court documents if they were delivered to the office," she did not dispute that AMS's policy was that important documents were supposed to be forwarded to Dubberly. A & E also filed affidavits from the process server, who averred that the associate had accepted service of the summons and complaint, and from the paralegal who assertedly had mailed A & E's motion for default final judgment to AMS.

After hearing argument, the trial court denied AMS's second motion to set aside the default. Relying on the associate's deposition testimony, the court found that both before and during

the pandemic, AMS had suffered from chronic disorganization rising to the level of "gross negligence."  The court therefore concluded that AMS had failed to establish excusable neglect.

## Analysis

Florida has "a strong preference for lawsuits to be determined on the merits and [] courts should liberally set aside defaults under appropriate circumstances."  *Geer v. Jacobsen*, 880 So. 2d 717, 720 (Fla. 2d DCA 2004).  "All reasonable doubts should be resolved in favor of setting aside the default."  *Szucs v. Qualico Dev., Inc.*, 893 So. 2d 708, 710 (Fla. 2d DCA 2005) (citing *Allstate Ins. Co. v. Ladner*, 740 So. 2d 42, 43 (Fla. 1st DCA 1999)).  To set aside a default judgment, a party must show excusable neglect and a meritorious defense and must move diligently to vacate the default. *Canney v. Canney*, 453 So. 2d 179, 181 (Fla. 2d DCA 1984).

We readily conclude that AMS established excusable neglect.[3] In her affidavit, Dubberly averred that AMS had an established

--------------------

[3] We reject without discussion A & E's cursory argument that AMS is precluded from establishing excusable neglect because it assertedly violated section 48.091(2), Florida Statutes (2019).  From our limited record, it does not appear that A & E raised this argument below or that any record was developed with respect to it.

6

procedure for routing important documents and averred that it had broken down in this instance. Nothing in the associate's deposition contradicts these sworn statements. Furthermore, although the record established that the usual routine at AMS was somewhat disrupted by the pandemic, nothing in the record supports the trial court's finding of chronic disorganization, let alone "gross negligence," either before or during the pandemic.

We have recognized several times that an isolated breakdown in established procedures may constitute excusable neglect and have little difficulty concluding that that authority applies here. *See, e.g., Mercury Marine Indus. v. Dillon*, 779 So. 2d 356, 357 (Fla. 2d DCA 2000) (determining that losing or misplacing lawsuit papers in a filing cabinet, despite a "usually reliable corporate procedure," constituted excusable neglect); *Marshall Davis, Inc. v. Incapco, Inc.*, 558 So. 2d 206, 207 (Fla. 2d DCA 1990) (holding that the failure of an employee—for "unknown reasons"—to follow corporate policy for handling court documents demonstrated excusable neglect); *see also S.B. Partners v. Holmes*, 479 So. 2d 280, 282-83 (Fla. 2d DCA

---

In any event, the trial court did not identify it as a basis for its ruling, and A & E cites no authority supporting it.

7

1985) (holding that the misplacing of complaint by a disorganized corporation may have shown "bureaucratic ineptitude" but still constituted excusable neglect); *cf. Otero v. Gov't Emps. Ins. Co.*, 606 So. 2d 443, 444 (Fla. 2d DCA 1992) (reversing the trial court's finding of excusable neglect because GEICO wholly failed to respond to "a continuing shower of legal proceedings naming it as the defendant, including a notice of trial," over a nine-month period; observing that "GEICO is not a mom-and-pop business confronted by an occasional lawsuit" but "a large corporate entity whose business includes engaging in litigation on a regular basis"; and concluding that GEICO's inaction "clearly constitutes gross negligence barring GEICO from relief").

AMS also proved that it has meritorious defenses. The trial court entered a default final judgment on a worthless instrument claim without A & E ever having alleged in its complaint that AMS intended to defraud A & E. But a plaintiff can only obtain damages under section 68.065(3)(a) of the Florida Statutes if the "maker . . . stops payment on the instrument with intent to defraud." *See Sanders Farm of Ocala, Inc. v. Bay Area Truck Sales, Inc.*, 235 So. 3d 1010, 1012–14 (Fla. 2d DCA 2017) (reversing summary

judgment in favor of a plaintiff on a worthless instrument claim because stopping payment on a check does not by itself establish an "intent to defraud"). Moreover, AMS's president averred that after tendering payment, AMS had learned that A & E had not performed the repairs it had agreed to perform and that the repairs that had been attempted had failed. AMS should be allowed the opportunity to prove this. *Cf., e.g., Sanders Farm of Ocala*, 235 So. 3d at 1012-13 (holding that an issue of fact precluded summary judgment on the "intent to defraud" element of a worthless instrument claim when the truck repairs performed by plaintiff exceeded the scope of defendant's authorization); *Maung v. Nat'l Stamping, LLC*, 842 So. 2d 214, 216 (Fla. 3d DCA 2003) (reversing summary judgment on the "intent to defraud" element of a worthless instrument claim because the goods sold by the plaintiff may have been counterfeit).

Finally, AMS moved expeditiously to set aside the default. *See Coquina Beach Club Condo. Ass'n, v. Wagner*, 813 So. 2d 1061, 1064 (Fla. 2d DCA 2002) (explaining that in evaluating whether a party has exercised due diligence in moving to vacate a default judgment, the court must consider the length of any delay and its

9

reasons (citing *Cinkat Transp., Inc. v. Maryland Cas. Co.*, 596 So. 2d 746, 747 (Fla. 3d DCA 1992))).  Although the parties dispute whether AMS ever received a service copy of the motion for default judgment, it is undisputed that AMS moved to vacate the default judgment the same day that Dubberly learned of it.

Because AMS met its burden of establishing excusable neglect, a meritorious defense, and due diligence, the trial court abused its discretion in denying the motion to set aside the default final judgment.  We therefore reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

NORTHCUTT and SILBERMAN, JJ., Concur.

———————————————

Opinion subject to revision prior to official publication.